UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATALIAN US NEW ENGLAND, LLC<br>525 Washington Boulevard<br>25th Floor<br>Jersey City, NJ 07310<br><br>                    Plaintiff,<br><br>     v.<br><br>OMNI RESOURCE MANAGEMENT<br>100 Messina Drive<br>Suite A<br>Braintree, MA 02184<br><br>CHRIS PRATT<br>265 King Street,<br>Cohasset, MA 02025<br><br>DAVID JORGE<br>103 Appleton Street,<br>Cranston, RI 02910<br><br>JOAN RODRIGUEZ<br>58 Deer Street,<br>Rumford, RI 02916<br><br>and<br><br>PAUL BUCKLEY<br>146 Elm Street,<br>Sanbornville, NH 03872<br><br>                    Defendants. | Civil Action No.: _____<br><br><br><br>**COMPLAINT** |

## COMPLAINT

Plaintiff ATALIAN US New England, LLC ("Plaintiff" or "Atalian New England"), by

counsel, for its Complaint against Defendants Omni Resource Management ("Omni"), Chris

Pratt ("Pratt"), David Jorge ("Jorge"), Joan Rodriguez ("Rodriguez) and Paul Buckley

("Buckley") (collectively "Defendants")[1] states as follows:

## INTRODUCTION

1.      Robust, healthy and vigorous competition is at the heart of American business.
Such competition drives innovation, efficiency and customer choice.  But such competition must
also be fair and lawful, and when a competitor intentionally and repeatedly crosses the line from
"vigorous" to "unlawful" competition, those businesses playing by the rules are left at an unfair
disadvantage.

2.      This action is brought to remedy Defendants' unlawful conduct conspiring to
unlawfully sabotage Atalian New England's customer relationships and reputation, to breach their
duties of loyalty and contractual obligations to Atalian New England, to misappropriate Atalian
New England's confidential information and trade secrets, to tortiously interfere with Atalian
New England's relationships with its customers and employees, and to unfairly and unlawfully
compete with Atalian New England.

3.      As detailed below, the Individual Defendants are former employees of Atalian
New England who, while employed by Atalian New England, used their positions as employees
of Atalian New England to sabotage Atalian New England's reputation and customer
relationships prior to and in anticipation of their resignations from Atalian New England and their
acceptance of offers of employment from Omni, a direct competitor.

4.      In doing so, the Individual Defendants breached their duty of loyalty to Atalian
New England, breached their contractual obligations to Atalian New England and/or tortiously
interfered with the contractual obligations of others, took confidential information belonging to

---

[1] Defendants Jorge, Rodriguez and Buckley are collectively referred to as the "Individual
Defendants."

Atalian New England, and conspired with each other and with Pratt and Omni to steal Atalian New England's customers and employees.

5.      In doing so, the Individual Defendants acted with the full knowledge and support of Pratt and Omni, both before and after their resignation from Atalian New England and their subsequent hire by Omni.

6.      Defendants' unlawful conspiracy is ongoing and increasing in severity, and is causing Atalian New England substantial and irreparable harm.  If preliminary injunctive relief is not granted, the irreparable harm suffered by Atalian New England will only increase in kind and degree.

7.      Atalian New England has already lost revenue as a result of Defendants' misconduct and illegal actions, and, if preliminary injunctive relief is not granted, it will certainly lose more.

8.      As such, Atalian New England brings this action for breach of contract, tortious interference, misappropriation of confidential information, unfair competition, breach of duty of loyalty and conspiracy, and seeks both legal and injunctive relief in order to remedy Defendants' unlawful conduct, protect its legitimate business interests and right to fair competition, and prevent further irreparable harm.

9.      Based on Defendants' unlawful actions outlined below, Atalian New England respectfully seeks remedies against all Defendants, including preliminary and permanent injunctive relief, as well as monetary relief, damages, lost profits, restitution for unjust enrichment, and other such relief as the Court may deem appropriate.

## THE PARTIES

10.     Plaintiff Atalian New England is a limited liability company formed under the laws of the State of Delaware which maintains a principal place of business at 525 Washington

Boulevard, 25th Floor, Jersey City, New Jersey, 07310.  The sole member of Atalian New England is ATALIAN US Shared Services ("Atalian Shared Services"), a limited liability company formed under the laws of the State of Delaware.  The sole member of ATALIAN Shared Services is Atalian Global Services, Inc. ("Atalian Global") a corporation incorporated under the laws of the State of Delaware.  Thus, Atalian New England is a citizen of the State of Delaware.

11.     Defendant Omni is a corporation that is organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in the U.S. at 100 Messina Drive, Suite A, Braintree, MA 02814.  Thus, Omni is a citizen of the Commonwealth of Massachusetts.

12.     Defendant Chris Pratt is an individual, residing at 265 King Street, Cohasset, MA 02025 and, upon information and belief, is a citizen of the Commonwealth of Massachusetts.

13.     Defendant David Jorge is an individual, residing at 103 Appleton Street, Cranston, RI 02910 and, upon information and belief, is a citizen of the state of Rhode Island.

14.     Defendant Jean Rodriguez is an individual, residing at 58 Deer Street, Rumford, RI and, upon information and belief, is a citizen of the state of Rhode Island.

15.     Defendant Paul Buckley is an individual, residing at 146 Elm Street, Sanbornville, NH and, upon information and belief, is a citizen of the state of New Hampshire.

## JURISDICTION AND VENUE

16.     Atalian New England is a citizen of the State of Delaware and none of the Defendants is a citizen of the State of Delaware.  Accordingly, there is complete diversity between Atalian New England and the Defendants in this lawsuit.

17.     The amount in controversy exceeds $75,000 exclusive of interest and costs.  Indeed, the damages suffered by Atalian New England due to Defendants' unlawful conduct to date are in the hundreds of thousands and will only grow if Defendants are not enjoined.

18.     The Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

19.     This Court has general jurisdiction over Defendant Omni because Omni is a citizen of the Commonwealth of Massachusetts and operates a principal place of business within the Commonwealth.

20.     This Court has general jurisdiction over Defendant Pratt because Pratt is a citizen of the Commonwealth of Massachusetts.

21.     This Court has personal jurisdiction over Defendants Buckley, Rodriguez and Jorge because each has sufficient contacts with the Commonwealth of Massachusetts, including entering into contracts in Massachusetts, appearing personally in Massachusetts, performing services for a Massachusetts company, and engaging in a conspiracy in and involving Massachusetts citizens, such that it is fair for those Defendants to be hailed into court in Massachusetts.

22.     Venue is proper in this Court under 28 U.S.C. § 1391 as multiple defendants reside in this judicial district and because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## FACTS

### Atalian New England's Business

23.     Suburban Integrated Facilities Resources, a small cleaning company focused on high quality service and customer satisfaction was founded in 1971.  The company was later incorporated as Suburban Contract Cleaning, Inc. ("Suburban").

24.     Over the next 47 years, Suburban grew to provide building, mechanical, cleaning, cleanroom and industrial services to its customers to keep spaces maintained, safe, and environmentally sustainable.

25.     In 2017, boasting decades of experience in the commercial office, education, biotechnology, municipal, and industrial industries, Suburban offered its customers responsive, flexible, and reliable services for any type of facility and had developed close relationships and partnerships with a wide array of customers.

26.     Atalian Global, the US business of ATALIAN Group, a leading international provider of facility services to companies in more than 30 countries, identified Suburban and several affiliated entities (collectively, the "Suburban entities") as promising acquisition targets in order to expand its U.S. service base and presence.

27.     On or about December 7, 2017, following a diligence period, Atalian New England acquired all Suburban entities owned by Glenn Pratt, including Suburban Contract Cleaning, Inc.

28.     Effective December 31, 2019, all Suburban entities, including Suburban Contract Cleaning, Inc., were merged those entities with and into Atalian New England, with Atalian New England surviving the mergers.

29.     Atalian New England is thus Suburban's successor in interest.

30.     At the time of the acquisition, Glenn Pratt, Suburban's CEO and primary owner, remarked, "We are honored to join the ATALIAN Group, which opens up new opportunities for our global and local clients alike, through best-in-class practices and resources that ATALIAN brings to this partnership. Our people have been the foundation of our company, and we are delighted about the opportunities they will have for professional growth in this truly global organization."

31.     Glenn Pratt received approximately $20 million for the sale of his interest in Suburban.

32.     Following the sale of his interest in Suburban, Glenn Pratt provided consulting services to Atalian New England pursuant to a consulting agreement with Atalian New England,

and his son, Chris Pratt accepted executive positions with Atalian New England and signed an employment agreement with Atalian New England.

33. Each of the Individual Defendants were also employees of Suburban at the time of the acquisition, and subsequent to the acquisition, each of the Individual Defendants accepted new employment with Atalian New England.

34. At the time each of the Individual Defendants accepted employment with Atalian New England, he was presented with and agreed to the terms of certain restrictive covenants intended to protect Atalian New England's customer relationships, goodwill and confidential information. The terms of each Individual Defendants' restrictive covenants is detailed below.

35. After the acquisition, Atalian New England performed well, increasing efficiency, revenue and customer satisfaction across the board.

36. Nevertheless, Glenn and Chris Pratt, notwithstanding the pending sale of Suburban to Atalian New England, and unbeknownst to Atalian New England, formed and incorporated Omni just weeks prior to the acquisition of Suburban by Atalian New England.

37. Chris Pratt is the CEO and founder of Omni.

38. Glenn Pratt is listed as the registered agent for Omni.

39. Omni is a direct competitor of Atalian New England and competes for the same customers and employees of Atalian New England.

40. Since its inception, Omni has solicited and conspired with employees of Atalian New England who were former employees of Suburban to breach their duty of loyalty to Atalian New England, breach their contractual obligations to Atalian New England, misappropriate confidential information belonging to Atalian New England, sabotage Atalian New England's customer relationships, and to resign from Atalian New England and join Omni in violation of their restrictive covenants.

**Omni, Chris Pratt, Paul Buckley and Joan Rodriguez**

41.     Pratt is the son of Glenn Pratt, the former CEO and primary owner of Suburban, and is the founder and CEO of Omni.

42.     Prior to the acquisition of Suburban by Atalian New England, Pratt (with assistance from his father, Glenn) founded Omni and subsequently took the role of CEO.

43.     Upon information and belief, both before and after his resignation, Pratt conspired with several key Atalian New England employees with the intent of inducing those employees to abandon their duty of loyalty to Atalian New England, breach their contractual obligations to Atalian New England, and to perform work for Omni while still in the employ of Atalian New England.

44.     Like Pratt, Rodriguez was an employee of Suburban at the time of the acquisition.

45.     Subsequent to the acquisition, Rodriguez accepted a position of employment with Atalian New England.

46.     On December 3, 2019, Rodriguez was offered a promotion to the position of Director of Industrial Services at Atalian New England, which is a key position within Atalian New England.

47.     As part of his promotion, Rodriguez received a pay increase to $105,000, significant benefits including health insurance, 401k Plan eligibility and a company car.

48.     As a condition of his promotion, Rodriguez agreed that he would abide by the terms of the Agreement Regarding Post-Employment Confidentiality and Competition (the "Rodriguez Agreement").  *See* Exhibit A.

49.     As part of the Rodriguez Agreement, Rodriguez acknowledged, among other things: that he had access to Atalian New England's Proprietary Information, which was developed at great expense to Atalian New England; that he had been and would continue to be

introduced to Atalian New England's clients, customers, suppliers and business partners; that the goodwill generated by his efforts with those clients, customers, suppliers and business partners belonged to Atalian New England; and that by virtue of his trusted position within the Company, his access to the Company's Proprietary Information, and his personal relationships with customers and crewmembers of Atalian New England that were developed in the scope of his employment, Atalian New England would be vulnerable to unfair post-employment competition by him in the event that he was not restricted.  *Id.*

50.     "Proprietary Information" is defined in the Rodriguez Agreement as "all proprietary or non-public information concerning the business, operations, concepts, proposals, business plans or trade secrets of the Company, including, but not limited to, the following: (i) strategic business plans, unique business practices, and proprietary operational methods, (ii) financial plans, financial models, financial statements, reports and systems including, accounting procedures and other information regarding sales, costs and pricing; (iii) information regarding the capabilities, experience, compensation, recruiting and training of employees; (iv) information regarding the legal or organizational structure of the Company, its agreements with third parties, other managers or any other person or entity; (v) information regarding relationships with the Company's past, current or prospective clients, customers, suppliers and partners; (vi) information regarding compliance with governmental laws and regulations, reporting requirements, claims, disputes, or legal or administrative proceedings of any sort; (vii) information regarding policies and procedures and policies and procedures manuals; (viii) intellectual property, including trade names, trademarks, copyrights, patents, inventions, discoveries, recipes and formulae; and (ix) generally any other information that could be considered of a confidential or proprietary nature."

51.     Rodriguez further agreed that he would not use or disclose, for any purpose, Proprietary Information belonging to Atalian New England or to third parties doing business with Atalian New England.

52.     Rodriguez further agreed to certain post-employment competitive restrictions, including: (a) a six (6) month restriction on performing services for a direct or indirect competitor of Atalian New England; (b) an eighteen (18) month restriction on inducing or encouraging any employees of Atalian New England to leave Atalian New England; (c) an eighteen (18) month restriction on hiring any employee of Atalian New England or any individual who was an employee of Atalian New England as of the date of his resignation or within six months prior to that date; and (d) an eighteen (18) month restriction on inducing or encouraging any customer, client, supplier, partner or other business contact of Atalian New England to cease or reduce doing business with Atalian New England or in any way interfering with the relationship between any such customer, client, supplier, partner or other business contact and Atalian New England. *Id.* at Paragraphs 4 and 5.

53.     In the event that Rodriguez chose to seek employment with any other business that was arguably competitive with Atalian New England within six (6) months of his resignation, he expressly agreed to provide Atalian New England with at least two (2) weeks advance written notice of his intention to do so, so that Atalian New England could evaluate whether such employment violated his Agreement, and decide whether to waive such restrictions in the event that the employment was not competitive or that Rodriguez's job duties were sufficiently different. *Id.* at Paragraph 4(b).

54.     Rodriguez also agreed that in the event that he wished to voluntarily terminate employment with Atalian New England, he was required to give Atalian New England four (4) weeks advance written notice. *Id.* at Paragraph 3.

55.     Finally, Rodriguez agreed that the parameters and restrictions of the Rodriguez

Agreement were reasonable and necessary to protect the business interests of Atalian New

England, that he was receiving adequate consideration for his agreement to those parameters and

restrictions, and that in the event that he violated or threatened to violate the Agreement, Atalian

New England would have the right to obtain an injunction against him in order to prevent the

irreparable harm that he acknowledged such violations of the Agreement would cause Atalian

New England. *Id.* at Paragraphs 8 and 10.

56.     Paul Buckley is a former Senior Vice President for Atalian New England and was

Rodriguez's direct supervisor at Atalian New England.

57.     On April 1, 2016, Buckley executed an Employment Agreement with Suburban,

which was amended by the parties on December 7, 2017. (the "Buckley Agreement"). *See* Exhibit

B.

58.     As Senior Vice President for Suburban, Buckley reported directly to Glenn Pratt,

father of Defendant Chris Pratt.

59.     The Buckley Agreement contained prohibitions on the use and disclosure of

confidential information for purposes other than the performance of Buckley's duties for Atalian

New England.  *Id.* at Section 6(a).

60.     Buckley received cash and other considerations for agreeing to the amendment to

his initial agreement.  *Id.*

61.     The Buckley Agreement also contained a provision governing "Conflicting

Employment and Non-Competition," which states:

> Executive agrees that during his employment with the Company,
> Executive will not engage in any other employment, occupation or
> consulting during the period of Executive's employment, nor will
> Executive engage in any other activities that conflict with his
> obligations to the Company.  During the period of Executive's
> employment with the Company, and through the later of (i) the

termination of the Company's payment to Executive of any severance payments contemplated by this Agreement or any other agreement entered into by the Company or any of its Affiliates and Executive, or (ii) a period of twenty-four (24) months, regardless of the reason or reasons for Executive's termination, Executive will not, without the Company's prior written consent, directly or indirectly, alone or as a partner, member, manager, owner, joint venturer, officer, director, employee, consultant, agent, independent contractor, stockholder or in any other capacity or any company or entity, engage in the Business (as hereafter defined) in Massachusetts, Connecticut, Rhode Island, New York, Pennsylvania, or any other state, city or other political subdivision in which the Company does business during the period of Executive's employment.. . . For purposes of this Agreement, the term "Business" means the business of the Company as currently conducted and during the period of Executive's employment, including, without limitation, the business of providing building, mechanical, janitorial cleaning, clean-room and industrial services.

*Id.* at Section 6(b).

62.     The Buckley Agreement also contained provisions governing the solicitation of employees and customers, which state, respectively:

Solicitation of Employees.  Executive agrees that, during the Restricted Period, Executive shall not either directly or indirectly solicit, induce, recruit or encourage any Company Employee (as defined below) to leave his or her employment or engagement by the Company, or take away or hire any such Company Employee, or attempt to solicit, induce, recruit, encourage or take away or hire any such Company Employee, either for himself or for any other person or entity.  For purposes of this Agreement, the term "Company Employee" means either: (A) any person who is or was, within the last six months of Executive's employment with the Company, any person who is at such time or was at any time within the ninety (90) day period immediately preceding Executive's employment with the Company an employee of the Company.

Solicitation of Customers.  Executive agrees that, during the Restricted Period, Executive shall not either directly or indirectly induce or solicit or attempt to induce or solicit any vendor, supplier, licensor, consultant, strategic partner, (collectively "Business Relations") or Customer (as defined below) of the Company.  Executive's agreement "not to solicit" means that Executive will not directly or indirectly initiate, contact or engage

> in any contact or communication, of any kind whatsoever, that has the purpose or effect of inviting, assisting, encouraging or requesting any Customer or Business Relation to: (A) transfer his/her/its business from the Company to Executive, Executive's employer or any third party, or (B) purchase any products or services from Executive, Executive's employer or any third party that are or may be competitive with the Company's products or services, or use any products or services of Executive, Executive's employer or of any third party that are or may be competitive with the Company's products or services, or (C) otherwise diminish, divert, discontinue or terminate  his/her/its patronage and/or business relationship with the Company.  For purposes of this Agreement, the term "Customer" means any customer of the Company: (x) with which, for which or to which Executive communicated, performed any services, or sold or licensed any products during the 24-month period preceding the termination of Executive's employment with the Company or (y) of which Executive has or had knowledge during his employment with the Company.

*Id.* at Sections 6(b) and (c).

63.     Buckley acknowledged that these restrictions were reasonable and necessary to protect the legitimate interests of the Company.  *Id.* at Section 6(d)(i).

64.     Buckley also agreed that, should he violate the above restrictions, the period of time during which the restrictions were in effect would be tolled during the period of violation and extended by a commensurate period.  *Id.* at Section 6(d)(ii).

65.     Buckley also agreed that the terms of the Buckley Agreement would be "binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns." *Id.* at Section 8.

66.     On November 26, 2019, Buckley's employment with Atalian New England terminated.

67.     Buckley executed a Separation Agreement and General Release with Atalian New England (the "Buckley Separation Agreement") which provided Buckley with the express right to "provide safety and worker's compensation related consulting services to entities engaged in the

building, mechanical, janitorial, cleaning, clean-room or industrial services." *See* Exhibit C at Section 7.

68.     At the same time, Buckley expressly acknowledged the continuing validity and effectiveness of the post-employment covenants in the Buckley Agreement, including the non-solicitation provisions therein.  *Id.*

69.     Upon information and belief, during the restricted period set forth in the Buckley Agreement, Buckley was hired as an employee and/or retained as a consultant at Omni by Pratt.

70.     Pratt and Omni had knowledge of Buckley's post-employment obligations to Atalian New England at the time that Buckley was hired.

71.     Despite knowledge of Rodriguez's Agreement with Atalian New England, *see* Exhibit A, and a similar agreement signed by Buckley, *see* Exhibit B, upon information and belief, Omni, acting through Buckley and Pratt, began soliciting Rodriguez to harm Atalian New England and to join Omni weeks before he resigned from Atalian New England.

72.     Upon information and belief, Omni, Pratt and Buckley conspired to induce Rodriguez to violate his employment obligations and duty of loyalty to Atalian New England by secretly entering into an agreement whereby Rodriguez would later be hired by Pratt and Omni.

73.     While Rodriguez was still an Atalian New England employee, Omni, Pratt, Buckley and Rodriguez began working against Atalian New England's interests, in an effort to sabotage Atalian New England's customer relationships.

74.     In reliance on this solicitation by Pratt and Buckley and a secret offer of employment from Omni, and in anticipation of accepting that offer, Rodriguez began systematically neglecting and actively sabotaging Omni's customer relationships with the intent of capitalizing on those soured relationships after he joined Omni.

14

75.     By way of example, Rodriguez intentionally staffed sites with more expensive non-local labor in order to drive up customer costs and sow dissatisfaction, refusing to find and procure more cost-suitable local labor in response to customer demand.

76.     Upon information and belief, Rodriguez, prior to his resignation from Atalian New England, worked with Omni, Pratt and Buckley to ensure that Omni would be able and was prepared to staff this customer with local labor once Rodriguez resigned from Atalian New England and joined Omni, thus "solving" the problem that he himself created.

77.     While still an Atalian New England employee, Rodriguez, with the knowledge and approval of Omni, Pratt and Buckley, began telling other key Atalian New England customers that he was resigning to accept a position with Omni, disparaging Atalian New England to those customers, and soliciting those customers to cease doing business with Atalian and to begin or increase their business with Omni.

78.     Rodriguez did not tell any of his supervisors at Atalian New England that he was in communication with Omni, Pratt and Buckley, nor that he had already decided to accept a position with Omni.

79.     Having effectively seeded the ground, on August 20, 2020, Rodriguez resigned from Atalian New England and subsequently accepted a position with Omni.

80.     At the time of his resignation, Rodriguez was obligated to return all Atalian New England owned property and information to Atalian New England, including his Company-issued and –owned iPhone.

81.     Prior to returning his Company-issued and –owned iPhone, Rodriguez surreptitiously removed the SIM-card from the iPhone and failed to return it.

82.     This SIM-card contains Atalian New England's confidential information relating to its customers, financial information and other data.

15

83.     Rodriguez was not authorized to remove or retain this SIM-card or the information contained on it.

84.     Upon information and belief, Rodriguez is using this data to assist Omni, Pratt and Buckley in soliciting Atalian New England's customers to do business with Omni.

85.     Upon information and belief, Rodriguez is also is sharing the confidential and proprietary information with Omni, Pratt and Buckley.

86.     Rodriguez provided no notice to Atalian New England in advance of his resignation, and did not inform Atalian New England that he had an offer of employment from Omni, which he intended to accept.

87.     Upon beginning employment with Omni, with Omni's knowledge and on Omni's behalf, Rodriguez began soliciting customers and employees of Atalian New England.

88.     Rodriguez and Buckley are, in fact, continuing to actively solicit Atalian New England's customers, and, due in no small part to Rodriguez's successful efforts to poison Atalian New England's relationships prior to his resignation, have convinced at least two large Atalian New England customers to transfer business from Atalian New England to Omni.

89.     Rodriguez and Buckley, on behalf of and with the encouragement of Omni and Pratt, are calling on, visiting and soliciting numerous Atalian New England customers in an effort to induce them to take their business from Atalian New England to Omni.

90.     Rodriguez and Buckley are soliciting and responding to requests for proposals from active Atalian New England customers on behalf of Omni.

91.     By virtue of their activities described above, Rodriguez and Buckley have breached their Agreements with Atalian New England.

92.     In taking Atalian New England's property and confidential information, Rodriguez has breached his Agreement with Atalian New England.

93.     In working against Atalian New England's interests and for the benefit of a direct competitor while still in the employ of Atalian New England, Rodriguez has breached his duty of loyalty to Atalian New England.

94.     In actively encouraging Buckley and Rodriguez to breach their Atalian New England Agreements, Omni and Pratt have tortiously interfered with Atalian New England's contractual rights, engaged in unfair competition with Atalian New England, and are liable for conspiracy.

95.     In actively encouraging Rodriguez to breach his Atalian New England Agreement, Omni, Pratt and Buckley have tortiously interfered with Atalian New England's contractual rights, engaged in unfair competition with Atalian New England, aided and abetted Rodriguez's breach of his duty of loyalty to Atalian New England, and are liable for conspiracy.

96.     In taking Atalian New England's confidential information and using it for his own benefit and for that of Omni, Rodriguez has misappropriated and converted Atalian New England's confidential information and  property.

97.     In actively working against Atalian New England's interests and assisting Atalian New England's direct competitor while still in the employ of Atalian New England, Rodriguez has breached his duty of loyalty to Atalian New England.

**Omni, Chris Pratt, Joan Rodriguez and David Jorge**

98.     David Jorge is a former Atalian New England employee.

99.     On October 29, 2019, Jorge accepted a position with Atalian New England as a Senior Operations Manager.

100.     At Atalian New England, Jorge reported directly to Rodriguez.

101.    At the inception of his employment with Atalian New England, Jorge signed an

Agreement Regarding Post-Employment Confidentiality and Competition (the "Jorge

Agreement").  *See* Exhibit D.

102.    Via the Jorge Agreement, Jorge acknowledged that he would have access to

Atalian New England's Proprietary Information, that he would be introduced to clients,

customers, suppliers and business partners of Atalian New England, that Atalian New England

would encourage and provide resources for Jorge to develop personal relationships with those

clients, customers, suppliers and business partners, that the goodwill generated from such efforts

and the devotion of resources belonged to Atalian New England, and that as a result, Atalian New

England would be vulnerable to unfair post-employment competition by Jorge.  *Id.* at Section B.

103.    The Jorge Agreement defined Proprietary Information to include "information

regarding relationships with the Company's past, current or prospective clients, customers,

suppliers and partners." *Id.* at Section 1.

104.    Via the Jorge Agreement, Jorge agreed that, both during and after his employment

with Atalian New England, he would not use or disclose any Proprietary Information belonging to

Atalian New England, nor would he make any statements or comments of a defamatory or

disparaging nature to any third party regarding the Company.  *Id.* at Section 2.

105.    Jorge also agreed not to compete with Atalian New England during his

employment and for a six (6) month period after his employment with Atalian New England

ended  *Id.* at Section 4.

106.    Specifically, Jorge agreed that:

> During Employee's employment with the Company and for a
> period six (6) months following the termination of such
> employment for any reason, Employee shall not, without the
> Company's written permission (which shall be granted or denied in
> the Company's sole discretion), compete with the Company or
> work for, provide any services to or otherwise directly or indirectly

> assist (whether or not for compensation) any person or entity
> which directly or indirectly competes with the Company.  Because
> the Company's business is, at a minimum, national in scope,
> Employee agrees that it is reasonable for the restriction contained
> in this paragraph to apply throughout the United States.

*Id.*

107.    Jorge further agreed to provide written notice to Atalian New England in the event

that he intended to provide services for a business "arguably" competitive with Atalian New

England.  *Id.*

108.    Jorge also agreed not to solicit customers or employees of Atalian New England on

behalf of third-parties both during his employment and for an eighteen (18) month period after his

employment with Atalian New England ended  *Id.* at Section 4.

109.    Specifically, Jorge agreed that:

> During the period of Employee's employment with the Company,
> and for a period of eighteen (18) months following the termination
> of such employment, regardless of the reason for termination,
> Employee shall not, directly or indirectly, (i) induce or encourage
> any employee of the Company to leave the employ of the
> Company, (ii) hire any individual who was an employee of the
> Company as of the date of Employee's termination of employment
> or within a six month period prior to such date, or (iii) induce or
> encourage any customer, client, supplier, partner or other business
> contact of the Company to cease or reduce doing business with the
> Company or in any way interfere with the relationship between any
> such customer, client, supplier, partner or other business contact
> and the Company.

*Id.* at Section 5.

110.    On information and belief, despite their knowledge of Jorge's contractual

restrictions and duties to Atalian New England, Omni, Pratt and Rodriguez solicited Jorge, while

Jorge was an Atalian New England employee, to breach his duty of loyalty and contractual

obligations to Atalian New England and to work for the benefit of Omni while in Atalian New

England's employ.

111.     As a consequence of the above solicitation, and on the promise of future employment with Omni, Jorge, while an employee of Atalian New England, travelled to Dickerson, Maryland to recruit and hire employees for Omni in order to provide staff for a customer that Omni, Pratt and Rodriguez intended to, and did, solicit away from Atalian New England.

112.     As a result of the actions of Omni, Pratt, Rodriguez and Jorge, Atalian New England lost this customer's business to Omni.

113.     While still an employee of Atalian New England, Jorge also solicited other Atalian New England employees to leave Atalian New England and to join Omni.

114.     On or about September 16, 2020, Jorge resigned from Atalian New England without notice.

115.     As promised by Omni, Pratt and Rodriguez, Jorge had been offered a position of employment at Omni, which he accepted.

116.     Immediately upon accepting a position with Omni, Jorge actively and systematically, and with the knowledge and encouragement of Omni, Pratt and Rodriguez, solicited Atalian New England employees to join Omni.

117.     Immediately upon accepting a position with Omni, Jorge actively and systematically, and with the knowledge and encouragement of Omni, Pratt and Rodriguez, solicited Atalian New England customers to transfer their business to Omni.

118.     Jorge's solicitations of Atalian New England customers and employees continue unabated to date.

119.     At all relevant times, Omni, Pratt and Rodriguez have been aware, encouraged, incentivized and benefitted from Jorge's solicitations of Atalian New England employees and customers.

120.    By virtue of his solicitations of Atalian employees and customers prior to his resignation from Atalian New England, Jorge has breached his contractual obligations to Atalian New England and his duty of loyalty to Atalian New England.

121.    By virtue of his solicitations of Atalian employees and customers following his resignation from Atalian New England, Jorge has breached his contractual obligations to Atalian New England and engaged in unfair competition with Atalian New England.

122.    By relying on confidential and Proprietary Information belonging to Atalian New England to solicit Atalian New England's customers and clients, Jorge has breached his contractual obligations to Atalian New England and misappropriated and converted Atalian New England's confidential information and property.

123.    In working against Atalian New England's interests and for the benefit of a direct competitor while still in the employ of Atalian New England, Jorge has breached his duty of loyalty to Atalian New England.

124.    In actively encouraging Jorge to breach his Atalian New England Agreement, Omni, Pratt and Rodriguez have tortiously interfered with Atalian New England's contractual rights, engaged in unfair competition with Atalian New England, aided and abetted Jorge's breach of his duty of loyalty to Atalian New England, and are liable for conspiracy.

## COUNT I
### Breach of Contract
### (Against Buckley)

125.    Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

126.    As set forth in detail above, Buckley entered into a lawful and enforceable Agreement with Atalian New England. *See* Exhibit B.

127.    The Buckley Agreement, and its provisions concerning confidentiality, confidential information, and return of company property, are valid and binding contractual obligations on Buckley.

128.    Likewise, the provisions of the Buckley Agreement containing post-employment restrictions on Buckley's competition with Atalian New England and Buckley's solicitation of Atalian New England's customers and employees, are valid and binding contractual obligations on Buckley.

129.    Atalian New England, as assign, has adhered to and performed any and all of its obligations under the Buckley Agreement and the Buckley Separation Agreement.

130.    Buckley has breached, and is continuing to breach, the express terms of the Buckley Agreement by accepting and commencing employment with Omni, a direct competitor of Atalian New England, within the restricted period as set forth in the Buckley Agreement.

131.    Buckley has breached, and is continuing to breach, the express terms of the Buckley Agreement by soliciting and/or assisting Omni and Pratt in soliciting Atalian New England's customers and business partners, within the restricted period as set forth in the Buckley Agreement.

132.    Buckley has breached, and is continuing to breach, the express terms of the Buckley Agreement by soliciting and/or assisting Omni and Pratt in soliciting Atalian New England's employees, including but not limited to Rodriguez, within the restricted period as set forth in the Buckley Agreement.

133.    If Buckley's breaches of the Buckley Agreement, including his acts of unlawful competition with Atalian New England and unlawful solicitation of Atalian New England's employees and customers are not preliminarily and permanently enjoined, Atalian New England will continue to sustain irreparable harm for which no adequate remedy at law exists.

134.    If Buckley's breaches of the Buckley Agreement are not preliminarily and permanently enjoined, Atalian New England's confidential, proprietary and trade secret information will be disclosed and/or used by and for the benefit of its competitor, Omni, and the value of such information will be permanently and irrevocably impaired and/or lost.

135.    As a result of Buckley's breaches of the Buckley Agreement, Atalian New England has sustained monetary damages.

### COUNT II
### Breach of Contract
### (Against Rodriguez)

136.    Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

137.    As set forth in detail above, Rodriguez entered into a lawful and enforceable Agreement with Atalian New England. *See* Exhibit A.

138.    The Rodriguez Agreement, and its provisions concerning confidentiality, confidential information, and return of company property, are valid and binding contractual obligations on Rodriguez.

139.    Likewise, the provisions of the Rodriguez Agreement containing post-employment restrictions on Buckley's competition with Atalian New England and Rodriguez's solicitation of Atalian New England's customers and employees, are valid and binding contractual obligations on Rodriguez.

140.    Atalian New England, as assign, has adhered to and performed any and all of its obligations under the Rodriguez Agreement.

141.    Rodriguez has breached, and is continuing to breach, the express terms of the Rodriguez Agreement by accepting and commencing employment with Omni, a direct competitor of Atalian New England, within the restricted period as set forth in the Rodriguez Agreement.

142.    Rodriguez has breached, and is continuing to breach, the express terms of the Rodriguez Agreement by soliciting and/or assisting Omni and Pratt in soliciting Atalian New England's customers and business partners, within the restricted period as set forth in the Rodriguez Agreement.

143.    Rodriguez has breached, and is continuing to breach, the express terms of the Rodriguez Agreement by soliciting and/or assisting Omni and Pratt in soliciting Atalian New England's employees, including but not limited to Rodriguez, within the restricted period as set forth in the Rodriguez Agreement.

144.    If Rodriguez's breaches of the Rodriguez Agreement, including his acts of unlawful competition with Atalian New England and unlawful solicitation of Atalian New England's employees and customers are not preliminarily and permanently enjoined, Atalian New England will continue to sustain irreparable harm for which no adequate remedy at law exists.

145.    If Rodriguez's breaches of the Rodriguez Agreement are not preliminarily and permanently enjoined, Atalian New England's confidential, proprietary and trade secret information will be disclosed and/or used by and for the benefit of its competitor, Omni, and the value of such information will be permanently and irrevocably impaired and/or lost.

146.    As a result of Rodriguez's breaches of the Rodriguez Agreement, Atalian New England has sustained monetary damages.

**COUNT III**
**Breach of Contract**
**(Against Jorge)**

147.    Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

148.    As set forth in detail above, Jorge entered into a lawful and enforceable Agreement with Atalian New England. *See* Exhibit D.

149.   The Jorge Agreement, and its provisions concerning confidentiality, confidential information, and return of company property, are valid and binding contractual obligations on Jorge.

150.   Likewise, the provisions of the Jorge Agreement containing post-employment restrictions on Buckley's competition with Atalian New England and Jorge's solicitation of Atalian New England's customers and employees, are valid and binding contractual obligations on Jorge.

151.   Atalian New England, as assign, has adhered to and performed any and all of its obligations under the Jorge Agreement.

152.   Jorge has breached, and is continuing to breach, the express terms of the Jorge Agreement by accepting and commencing employment with Omni, a direct competitor of Atalian New England, within the restricted period as set forth in the Jorge Agreement.

153.   Jorge has breached, and is continuing to breach, the express terms of the Jorge Agreement by soliciting and/or assisting Omni and Pratt in soliciting Atalian New England's customers and business partners, within the restricted period as set forth in the Jorge Agreement.

154.   Jorge has breached, and is continuing to breach, the express terms of the Jorge Agreement by soliciting and/or assisting Omni and Pratt in soliciting Atalian New England's employees, including but not limited to Jorge, within the restricted period as set forth in the Jorge Agreement.

155.   If Jorge's breaches of the Jorge Agreement, including his acts of unlawful competition with Atalian New England and unlawful solicitation of Atalian New England's employees and customers are not preliminarily and permanently enjoined, Atalian New England will continue to sustain irreparable harm for which no adequate remedy at law exists.

156.     If Jorge's breaches of the Jorge Agreement are not preliminarily and permanently enjoined, Atalian New England's confidential, proprietary and trade secret information will be disclosed and/or used by and for the benefit of its competitor, Omni, and the value of such information will be permanently and irrevocably impaired and/or lost.

157.     As a result of Jorge's breaches of the Jorge Agreement, Atalian New England has sustained monetary damages.

**COUNT IV**
**Tortious Interference with Contract**
**(Against Omni and Pratt)**

158.     Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

159.     Despite knowledge of Buckley's Agreement with Atalian New England, Omni and Pratt solicited Buckley to join Omni as an employee and thereafter employed Buckley, thereby inducing Buckley to breach his Agreement.

160.     Despite knowledge of Buckley's Agreement with Atalian New England, Omni continues to employ Buckley.

161.     Despite knowledge of Buckley's Agreement with Atalian New England, Omni and Pratt have encouraged Buckley to solicit employees and customers of Atalian in violation of his Agreement, thereby inducing Buckley to breach his Agreement.

162.     Despite knowledge of Rodriguez's Agreement with Atalian New England, Omni and Pratt solicited Rodriguez to join Omni as an employee and thereafter employed Rodriguez, thereby inducing Rodriguez to breach his Agreement.

163.     Despite knowledge of Rodriguez's Agreement with Atalian New England, Omni continues to employ Rodriguez.

164.     Despite knowledge of Rodriguez's Agreement with Atalian New England, Omni and Pratt have encouraged Rodriguez to solicit employees and customers of Atalian in violation of his Agreement, thereby inducing Rodriguez to breach his Agreement.

165.     Despite knowledge of Jorge's Agreement with Atalian New England, Omni and Pratt solicited Jorge to join Omni as an employee and thereafter employed Jorge, thereby inducing Jorge to breach his Agreement.

166.     Despite knowledge of Jorge's Agreement with Atalian New England, Omni continues to employ Jorge.

167.     Despite knowledge of Jorge's Agreement with Atalian New England, Omni and Pratt have encouraged Jorge to solicit employees and customers of Atalian in violation of his Agreement, thereby inducing Jorge to breach his Agreement.

168.     The actions of Omni and Pratt were neither privileged nor justified.

169.     The tortious interference by Omni and Pratt with the contracts of Buckley, Rodriguez and Jorge has caused damage to Atalian New England in an amount to be proven at trial.

170.     The tortious interference by Omni and Pratt with the contracts of Buckley, Rodriguez and Jorge is malicious and with willful disregard of Atalian New England's rights.

### COUNT V
### Tortious Interference with Contract
### (Against Buckley)

171.     Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

172.     Despite knowledge of Rodriguez's Agreement with Atalian New England, Buckley solicited Rodriguez to join Omni as an employee (which thereafter employed Rodriguez), thereby inducing Rodriguez to breach his Agreement.

173.    Despite knowledge of Rodriguez's Agreement with Atalian New England, Buckley has encouraged and is continuing to encourage Rodriguez to solicit employees and customers of Atalian in violation of his Agreement, thereby inducing Rodriguez to breach his Agreement.

174.    The actions of Buckley were neither privileged nor justified.

175.    The tortious interference by Buckley with the contract of Rodriguez has caused damage to Atalian New England in an amount to be proven at trial.

176.    The tortious interference by Omni and Pratt with the contracts of Buckley, Rodriguez and Jorge is malicious and with willful disregard of Atalian New England's rights.

**COUNT VI**
**Breach of Duty of Loyalty**
**(Against Buckley, Rodriguez and Jorge)**

177.    Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

178.    As employee and/or officers of the company, Buckley, Rodriguez and Jorge owed Atalian New England a duty of loyalty during the term of their employment with Atalian New England.

179.    Buckley, Rodriguez and Jorge negligently or intentionally failed to act in good faith and solely for the benefit of Atalian New England in all matters for which each was employed.

180.    Buckley, Rodriguez and Jorge negligently or intentionally failed to act in good faith and solely for the benefit of Atalian New England in all manners while employed with Atalian New England by, inter alia, (a) failing to disclose material information related to Atalian New England's relationship with its customers and employees; (b) soliciting employees and customers for Omni while still employed by Atalian New England; (c) secretly assisting

executives from Omni to solicit customers and employees to cease business with Atalian New England and/or to join or do business with Omni; (d) taking Atalian New England's confidential information and using it for their own benefit and the benefit of Omni;  and (e) failing to act solely for Atalian New England's benefit in the performance of their duties for the company.

181.    The breach of their duty of loyalty by Buckley, Rodriguez and Jorge, both individually and collectively, was a real factor in causing damage to Atalian New England in an amount to be proven at trial.

182.    The breach of their duty of loyalty by Buckley, Rodriguez and Jorge was malicious and with willful disregard of Atalian New England's rights.

**COUNT VIII**
**Aiding and Abetting Breach of Duty of Loyalty**
**(Against Omni and Pratt)**

183.    Atalian New England repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

184.    Pratt and Omni were aware that, as employees of Atalian New England, Buckley, Rodriguez and Jorge owed Atalian New England a duty of loyalty.

185.    Despite that knowledge, Pratt and Omni incentivized, encouraged, induced, aided and abetted Buckley, Rodriguez, and Jorge in breaching their duty of loyalty to Atalian New England.

186.    Pratt and Omni benefitted from the breaches of duty of loyalty by Buckley, Rodriguez and Jorge.

187.    The aiding and abetting of the breaches of their duty of loyalty by Atalian New England's employees was a real factor in causing damage to Atalian New England in an amount to be proven at trial.

188.    The aiding and abetting of such breaches by Omni and Pratt was knowing and intentional, and was carried out with the intent of causing harm to Atalian New England.

189.    The actions of Omni and Pratt were malicious and with willful disregard of Atalian New England's rights.

## COUNT VII
## Misappropriation of Trade Secrets
### (Against Rodriguez and Omni)

190.    The allegations of the above paragraphs are incorporated herein with the same force and effect as if set forth in full below.

191.    Atalian New England's confidential information, including without limitation that described above, constitutes trade secrets that are not known in the industry, that provide Atalian New England with an advantage over competitors who do not know the confidential information, and therefore has independent value from not being generally known.

192.    Atalian New England employs appropriate measures to protect the secrecy of its confidential information, including use of confidentiality agreements (such as the Rodriguez Agreement), identifying information as confidential, and using computer passwords and firewalls to appropriately limit access to the confidential information.

193.    Rodriguez had a duty to maintain such confidential information in confidence and to use it only for the limited purpose of carrying out his job duties with Atalian New England.

194.    Rodriguez and Omni had a duty not to take or use Atalian New England's confidential information.

195.    Despite this, Rodriguez took Atalian New England's confidential information, including his company-issued iPhone's SIM-card, with him to Omni, shared the information with Omni, and is using the information to unlawfully solicit Atalian New England's customers and employees.

196.     Rodriguez and Omni have willfully and in bad faith used and/or disclosed Atalian New England's trade secrets, thereby evincing a reckless indifference to Atalian New England's rights.

197.     Atalian New England's trade secret information is of a special, unique, extraordinary and intellectual character, giving it special and unique value, the loss of which may not be reasonably or adequately compensated in damages.

198.     The misappropriation of Atalian New England's trade secrets by Rodriguez and Omni was malicious and with willful disregard of Atalian New England's rights.

199.     By reason of the conduct of Rodriguez and Omni, Atalian New England has sustained substantial damages, and, if Rodriguez and Omni are not enjoined, will continue to sustain substantial damages.

200.     Further, the use and disclosure of Atalian New England's confidential information and other trade secrets by Rodriguez and Omni have caused and will continue to cause Atalian New England irreparable harm for which no adequate remedy at law exists.

**COUNT IX**
**Unfair Competition**
**(Against All Defendants)**

201.     The allegations of the above paragraphs are incorporated herein with the same force and effect as if set forth in full below.

202.     Omni, Pratt, Rodriguez, Buckley and Jorge are unfairly competing with Atalian New England.

203.     Through their above actions, Defendants are unfairly competing with Atalian New England by soliciting Atalian New England's customers and employees in violation of both contractual and common law duties, and by utilizing Atalian New England's confidential and proprietary information that Rodriguez, Buckley and Jorge obtained during their employment

with Atalian New England and promised not to use or disclose, and by (in the case of Rodriguez, Buckley, and Jorge) breaching their duties of loyalty to aid a competitor and harm Atalian New England or (in the case of Omni and Pratt) aiding and abetting such breaches of Atalian New England's employees' duties of loyalty.

204.     Unless Defendants are preliminarily and permanently enjoined from unfairly competing with Atalian New England, Atalian New England will suffer immediate and irreparable harm.

205.     In addition, and in the alternative, the unfair competition by Defendants has caused damage to Atalian New England in an amount to be proven at trial.

206.     The actions of Defendants were taken for an improper purpose and to specifically damage Atalian New England and its business.

207.     The actions of Defendants were not privileged or justified.

208.     The actions of Defendants were malicious and with willful disregard of the rights of Atalian New England.


## COUNT X
## Conspiracy
## (Against All Defendants)

209.     The allegations of the above paragraphs are incorporated herein with the same force and effect as if set forth in full below.

210.     Through their actions as set forth above, Defendants acted with a common purpose to do an unlawful act and/or to do a lawful act by unlawful means or for an unlawful purpose.

211.     Through their actions, as set forth above, Defendants intended to injure Atalian New England.

212.     Through their actions, as set forth above, Defendants engaged in overt acts in pursuance of their common purpose.

213.     The conspiracy between and among Defendants has caused damage to Atalian New England, in an amount to be proven at trial.

214.     Defendants conspired maliciously and with willful disregard of Atalian New England's rights.

## REQUEST FOR RELIEF

WHEREFORE, having alleged this Complaint against Defendants, Atalian New England respectfully requests that the Court award the following relief:

(a)     Preliminary and permanent orders restraining and enjoining Defendants and all those persons and entities acting in concert and participation with them from sharing, misappropriating, and using Atalian New England's information, data, or documents;

(b)     Preliminary and permanent orders restraining and enjoining Defendants and all those persons and entities acting in concert and participation with them from otherwise possessing, using or disclosing Atalian New England's trade secrets and other confidential information;

(c)     Preliminary and permanent orders restraining and enjoining Defendants Buckley, Rodriguez and Jorge from working for, being affiliated with, and/or performing any services for any competitor of Atalian New England, including but not limited to Omni, until such time as the restricted periods in their respective Agreements end;

(d)     Preliminary and permanent orders restraining and enjoining Defendants Buckley, Rodriguez and Jorge from soliciting any of Atalian New England's customers for their own benefit or for that of any competitor of Atalian New England, including but not limited to Omni, until such time as the restricted periods in their respective Agreements end;

(e)      Preliminary and permanent orders restraining and enjoining Defendants Buckley, Rodriguez and Jorge from soliciting any of Atalian New England's employees for their own benefit or for that of any competitor of Atalian New England, including but not limited to Omni, until such time as the restricted periods in their respective Agreements end;

(f)      Preliminary and permanent orders restraining and enjoining Defendants Omni and Pratt from interfering with Atalian New England's contractual rights with respect to Buckley, Rodriguez and Jorge;

(g)      Judgment against Defendants for damages in an amount to be proven at trial;

(h)      Attorneys' fees, costs and such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Atalian New England demands a trial by jury on all claims above for which a jury trial is permitted.

Respectfully submitted,

COZEN O'CONNOR

Dated:  October 12, 2020

_____
Michael A. Savino (#568826)
Jonathan R. Cavalier (*pro hac vice to be filed*)
45 Broadway, 16th Floor
New York, NY 10006
(212) 453-3937

Attorneys for Plaintiff
Atalian New England